# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MIGUEL V. PRO, *et al.*, individually and on behalf of others similarly situated,<br><br>                                   Plaintiffs,<br><br>          v.<br><br>HERTZ EQUIPMENT RENTAL CORPORATION,<br><br>                                   Defendant. | Civil Action No. 06-3830 (DMC) |

---

## PLAINTIFFS' BRIEF IN SUPPORT OF PRELIMINARY APPROVAL OF PROPOSED CLASS SETTLEMENT

---

James E. Cecchi
Lindsey H. Taylor
Zachary S. Bower
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Rd.
Roseland, New Jersey 07068
(973) 994-1700

Paul M. Weiss
Richard J. Burke
COMPLEX LITIGATION GROUP LLC
513 Central Avenue, Suite 300
Highland Park, Illinois 60035
(847) 433-4500

Jonathan Shub
Scott Alan George
SEEGER WEISS LLP
550 Broad Street
Newark, New Jersey 07102
(973) 639-9100

*Counsel for Plaintiffs and Class Counsel*

# TABLE OF CONTENTS

Table of Authorities ................................................................................................... iii

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND ...................................................................................... 3

      A.      Factual and Procedural History ..................................................................... 3

      B.      Terms of the Settlement ................................................................................ 5

LEGAL ARGUMENT ................................................................................................ 8

      A.      Standard of Review for Preliminary Settlement Approval and Class Certification for Settlement Purposes ................................................................................ 8

      B.      Class Certification Should Be Granted For Settlement Purposes Under Rule 23 ..... 10

      1.      The Rule 23(a) Factors Are Met ................................................................. 11

        a.      Numerosity ......................................................................................... 11

        b.      Commonality ...................................................................................... 12

        c.      Typicality ........................................................................................... 12

        d.      Adequacy ........................................................................................... 13

      2.      The Rule 23(b)(3) Factors Are Met ............................................................ 14

        a.      Predominance ...................................................................................... 14

        b.      Superiority ......................................................................................... 15

      C.      The Proposed Settlement Is Fair, Reasonable and Adequate, Meriting Preliminary Court Approval Under the *Girsh* Factors ................................................... 17

        1.      Complexity, Expense, and Likely Duration of the Litigation ........................... 17

        2.      The Reaction of the Class to the Settlement .................................................. 18

        3.      The Stage of Proceedings and the Amount of Discovery Completed ................ 18

        4.      Risks of Establishing Liability ................................................................... 19

        5.      Risks of Establishing Damages ................................................................. 20

        6.      Risks of Maintaining Class Action Status Through Trial ................................ 21

7.    Ability to Withstand Greater Judgment.............................................................21

8.    The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and All the Attendant Risks of Litigation...........................22

D.    The Proposed Notice Program Satisfies Rule 23 and Due Process and Should Be Approved...............................................................................................................23

1.    The Proposed Notice Program is Adequate ................................................23

2.    The Form and Content of the Class Notice is Adequate ............................24

3.    The Proposed Claim Form is Adequate ......................................................25

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) .................................................. 10, 14, 16

*Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305 (7th Cir. 1980)................... 23

*Baby Neal v. Casey*, 43 F.3d 48 (3d Cir. 1994) ..................................................................... 12

*Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990)......................................................... 20

*Barnes v. Am. Tobacco, Inc.*, 161 F.3d 127 (3d Cir. 1998) ...................................................... 13

*Bentley v. Legent Corp.*, 849 F. Supp. 429 (E.D. Va. 1994),
     *aff'd without op. sub nom. Herman v. Legent Corp.*, 50 F.3d 6 (4ᵗʰ Cir. 1995) ....................... 20

*Bernhard v. T.D. Bank, N.A.*, 2009 WL 3233541 (D.N.J. Oct. 5, 2009). ..................................... 25

*Carlough v. Amchem Products*, 158 F.R.D. 314 (E.D. Pa. 1993) ............................................. 24

*Carnegie v. Household International, Inc.*, 376 F.3d 656 (7th Cir. 2004) ................................... 21

*Danvers Motor Co. v. Ford Motor Co.*, 543 F.3d 141 (3d Cir. 2008)........................................... 15

*Desantis v. Snap-On Tools Co., LLC*, 2006 WL 3068584 (D.N.J. Oct. 27, 2006)....................... 23

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974).............................................................. 24

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975)..................................................................... 9, 17

*In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001)................................................. passim

*In re Cmty. Bank of N. Virginia*, 418 F.3d 277 (3d Cir. 2005) ........................................ passim

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
     55 F.3d 768 (3d. Cir. 1995) ............................................................................ 8, 17, 19, 22

*In re Prudential Ins. Co. Am. Sales Pract. Litig.*, 148 F.3d 283 (3d Cir. 1998)................... passim

*In re Prudential Ins. Co. of Am. Sales Pract. Litig.*, 962 F.Supp. 450 (D.N.J. 1997)
     *aff'd*, 148 F.3d 283 (3d Cir. 1998)................................................................................ 11

*In re Prudential Ins. Co. of America Sales Pract. Litig.*,
     177 F.R.D. 216 (D.N.J. 1997) ...................................................................................... 24

*In re Sch. Asbestos Litig.*, 921 F.2d 1330 (3d Cir. 1986)......................................................... 8

*In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231 (D. Del. 2002),
     *aff'd* 391 F.3d 516, 537 (3d Cir. 2004)........................................................................... 20

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d  Cir. 2004)................................ passim

*Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178 (3d Cir. 2001) ............................................. 13

*Jones v. Commerce Bancorp*, 2007 WL 2085357 (D.N.J. July 16, 2007)..................................... 9

*Levinson v. Prentice-Hall, Inc.*, 868 F.2d 558 (3d Cir. 1989) .................................................... 20

*Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.* 149 F.R.D. 65 (D.N.J. 1993),
     *vacated and remanded*, 171 F.3d 818 (3d Cir. 1999)........................................................ 11

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950).......................................... 24

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154 (3d Cir. 2001)............... 13

*Simon v. KPMG LLP*, 2006 WL 1541048 (D.N.J. June 2, 2006)............................................... 23

*Smith v. Prof'l Billing & Mgt. Serv., Inc.*, 2007 WL 4191749 (D.N.J. Nov. 21, 2007) ............... 9

*Spark v. MBNA Corp.*, 48 Fed. Appx. 385 (3d Cir. 2002)........................................................ 23

*Stewart v. Abraham*, 275 F.3d 220 (3d Cir. 2001)................................................................ 11

*Sullivan v. DB Investments, Inc.*, 667 F.3d 273 (3d Cir. 2011) ............................................... 15

*Weiss v. Mercedes-Benz of North America*, 899 F. Supp. 1297 (D.N.J. 1995) ........................... 20

*West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970),
     *aff'd*, 440 F.2d 1079 (2d Cir. 1971)............................................................................ 20

**RULES**

Fed.R.Civ.P. 23 ...................................................................................................................... *passim*

## PRELIMINARY STATEMENT

Plaintiffs Miguel V. Pro and Davis Landscape, Ltd  ("Plaintiffs") hereby move pursuant to Rule 23 of the Federal Rules of Civil Procedure for preliminary approval of the Class Action Settlement Agreement ("Settlement") (attached as Exhibit 1) entered into with Defendant Hertz Equipment Rental Corporation ("HERC" or "Defendant") in the above matter.  For the reasons that follow, the Settlement satisfies the prerequisites of Rule 23, and therefore, should be preliminarily approved.

The Settlement provides both substantial monetary and injunctive relief and specifically remedies Plaintiffs' allegations regarding HERC's Loss and Damage Waiver ("LDW") program. The Settlement Class includes "all natural persons or business entities, other than national account customers, throughout the United States, who rented equipment from any store owned or operated by Hertz Equipment Rental Corporation or its licensees between August 15, 2000 and the preliminary approval date, and who paid a loss/damage waiver charge and/or an environmental recovery fee."[1]

Under the terms of the Settlement, Defendant has agreed to reimburse Class members who paid for damages sustained to equipment they rented up to 75% of the amount of the deductible paid during the class period *or* will provide partial reimbursement for the total amount of LDW paid during the Class period, offering the choice of either future rental discounts or cash payment.

Given the significant relief provided by the Settlement to the Class, Plaintiffs seek entry of an Order in the form attached as Exhibit D to the Settlement which:  (1) preliminarily approves the Settlement Class under Rule 23(a) and (b)(3); (2) re-appoints Plaintiffs to represent the Class; (3) re-appoints Class Counsel to represent the Class; (4) preliminarily approves this

---

[1]     All capitalized terms are defined in the Settlement and have the same meaning herein.

Settlement under Rule 23(e) for purposes of issuing Class Notice; (5) approves the timing, content and manner of the Class Notice; (6) appoints the parties to select a Settlement Administrator; (7) enjoins the commencement or continued prosecution by any Releasing Party of any Released Claim against any Released Party and of any Related Action; (8) schedules the Final Approval Hearing; and (9) makes such orders as are necessary and appropriate to effectuate the terms and conditions of this Settlement.

## FACTUAL BACKGROUND

**A.      Factual and Procedural History**

On August 15, 2006, Plaintiffs initiated this civil action against HERC, seeking relief on behalf of themselves and, under Rule 23, for all others similarly situated.  The gravamen of Plaintiffs' claims was (and is) that HERC's LDW and Environmental Recovery Fee ("ERF") were unconscionable in that the LDW provided only illusory coverage and that the ERF did not reflect any actual additional fees or expenses related to the protection of the environment.  Both charges appear in form contracts that all putative class members executed with HERC, each of which contained a choice of law clause mandating application of New Jersey law.

As this Court explained in its prior opinions granting class certification and denying summary judgment, the LDW is a fee paid by customers in exchange for HERC agreeing to waive any loss or damage claims against the customers for loss or damage to the equipment while in their possession.  As Plaintiffs have alleged, however, the LDW is fundamentally illusory because the damages "waived" constitute less than one percent of collected LDW revenue. HERC did not adequately disclose the practical limitations on the "waiver" given the exclusions and the deductible.  The losses were only "waived" for those very few LDW purchasers whose rented equipment was "totally lost."  HERC denies the allegations asserted by Plaintiffs, and contends that LDW provided valuable benefits to HERC's customers and permitted HERC customers to rent equipment necessary to their businesses while managing the risk of liability that would result if the equipment was damaged, lost, or stolen, and that the ERF did not violate any law.

On May 1, 2008, Plaintiffs filed their Motion for Class Certification (D.E. 52).  On June 2, 2008, HERC filed its Opposition to Plaintiffs' Motion for Class Certification (D.E. 64).  Alongside its papers opposing Plaintiffs' Motion for Class Certification (D.E. 62), HERC filed

its first motion for summary judgment (D.E. 58) and, shortly thereafter, a related motion for sanctions pursuant to, *inter alia*, Rule 11 of the Federal Rules of Civil Procedure (D.E. 76).

Plaintiff opposed HERC's motions, sought to strike several of the supporting papers filed by HERC, and filed their reply in further support of class certification on July 10, 2008 (D.E. 78, 79, 81).  On November 5, 2008, upon direction of the Court, each of the parties submitted further briefing "Regarding Choice of Law and Manageability Issues" (D.E. 99, 100).

On December 11, 2008 (D.E.103), this Court granted Plaintiffs' Motion for Class Certification (with amendment on February 3, 2009 (D.E. 110)) and certified the following class under Rule 23(b)(3) and (b)(2) which includes those persons who paid an LDW and/or ERF:

> All natural persons and business entities who rented equipment from any store owned or operated by Hertz Equipment Rental Corporation or its licensees, and who paid a Loss/Damage Waiver charge and/or an Environmental Recovery Fee. (D.E. 110)

The Court found that "Plaintiffs' claims can be substantiated through the development of facts common to all class members without an individualized inquiry as to what each class member was told, motivated by, or believed when he or she purchased LDW and/or ERF."  *Id*. at 6.  The Court also found that Plaintiffs are adequate Class Representatives and appointed Class Counsel.  Thereafter, on January 13, 2009, the Court denied HERC's Motion for Summary Judgment and Motion for Sanctions (D.E. 105).

On December 24, 2008, HERC filed its petition with the Third Circuit seeking interlocutory review, pursuant to Rule 23(f), of the Order granting Plaintiffs' Motion for Class Certification.  On April 17, 2009, after Plaintiffs filed their opposition to such review, the Third Circuit denied HERC's petition.

On April 5, 2010, after extensive briefing on the contents and manner of notice to the Class about the Certification, the Court approved a notice program which provided notice to the class by direct mailing (D.E. 144).[2]

On February 17, 2012, Defendant filed a Motion to Decertify the Class and two Motions for Partial Summary Judgment, one related to LDW claims and the other related to ERF claims (D.E. 202-204).  On April 16, 2012, Plaintiffs filed their opposition to the Motion for Partial Summary Judgment related to LDW claims (D.E. 210-212). On June 25, 2012, the Court denied HERC's Motion for Summary Judgment as to LDW (D.E. 224) (HERC's motion for reconsideration of this decision was unsuccessful (D.E. 234).  On July 19, 2012, the Court granted HERC's Motion for Summary Judgment as to ERF.  (D.E. 230).  Finally, on September 25, 2012, the Court provisionally terminated the Motion to Decertify the Class pending mediation (D.E. 235).  HERC's motion to strike the testimony of plaintiffs' expert, on *Daubert* grounds, remains pending.

Pursuant to an Order by the Court on July 5, 2012 (D.E. 225), the parties then commenced mediation before the Honorable William Wertheimer (Ret.).  After four formal mediation sessions with Judge Wertheimer, and multiple telephonic and electronic communications, the parties reached a Settlement Agreement that, if granted final approval, will fully and fairly resolve the claims of Plaintiffs and the Class.

**B.    Terms of the Settlement**

Under the terms of the Settlement, the Class is provided both retroactive and proactive benefits.  Defendant will, at the election of the Class member, reimburse customers who paid for damage to rented equipment (Category 1 claimant) or provide compensation for LDW paid (Category 2 claimant).  The Class member may elect settlement benefits under Category 1 or

---

[2]      The Settlement proposes the same notice program.

Category 2, but cannot participate in both categories.  The terms of the Settlement further provide that HERC will change its business practices relating to its description of the LDW program and ERF fee in its form rental contract, as provided in Exhibit E to the Settlement Agreement.

Category 1 claimants are those HERC customers who purchased LDW, experienced either partial or complete damage to the HERC rental equipment, and paid HERC for such damages up the total amount of the applicable LDW deducible for each such occurrence during the Class period.   HERC will pay up to $3,000,000 to cover these Category 1 claims. Qualifying Category 1 claims will receive 75% of the amount of the total deductible paid by the claimant during the Class period, subject to possible *pro rata* reduction if the total amount of eligible claims exceeds $3,000,000.

Category 2 claimants are those Class members who do not submit a Category 1 claim. Category 2 claimants who are Cash/Credit Card Customers (typically one-time or sporadic customers), may elect to receive discounts on up to four future rentals (for rental charges of $100 or more) totaling 50% of all LDW paid during the class period *or* a cash payment equal to 15% of the total LDW paid during the class period.  Those Class members who are Local Account Customers may elect to receive discounts of up to 20% of the total rental charge on up to four future rentals (for rental charges of $100 or more) totaling 33% of their total LDW paid during the Class period *or* a cash payment equal to 6% of the total LDW paid during the Class period. These benefits are not drawn from a limited fund and are not subject to any possible *pro rata* reduction.

The forward looking benefits to the Class are equally, if not more valuable.  In addition to payments described above related to HERC's past practices, HERC will change its business

practices going forward with respect to the way it describes and discloses its LDW program and ERF fee to its customers, as set forth in Exhibit E to the Settlement Agreement.  Among other things, HERC will plainly disclose the deductible amount on the first page of its disclosure documents.

In addition, HERC will pay the entire costs of administration of the Settlement, including Notice.  Notice to the class will be via direct mail, using electronic mail when available, based on the records maintained by HERC as part of each individual rental.  This method of notice was approved (and was very successful) when notice of Class Certification was made to the Class after the Court granted Certification.  The forms of notice are attached as Exhibit C to the Settlement Agreement.

Finally, HERC has agreed not to oppose, except as otherwise provided in this Settlement Agreement as to the timing of the payment and the amount of the first payment, Plaintiffs' request for an award of fees and costs no greater than $11.5 million.  In no event will any award of attorneys' fees and costs diminish or reduce in any way the amount of relief available to the Class.

## LEGAL ARGUMENT

**A.      Standard of Review for Preliminary Settlement Approval and Class Certification
for Settlement Purposes**

Rule 23(e) requires judicial approval for a compromise of claims brought on a class basis.
Fed.R.Civ.P. 23(e) ("The claims . . . of a certified class may be settled…only with the court's
approval."). Procedurally, the approval of a class action settlement takes place in two stages. In
the first stage of the approval process, the court preliminarily approves the Settlement pending a
fairness hearing, temporarily certifies the Class, and authorizes notice to be given to the Class.

Preliminary approval of a settlement has both a procedural and a substantive component.
As for the procedural component, courts analyze whether "the settlement was the product of
arms-length negotiations.  In deciding whether to approve a proposed settlement, the Third
Circuit has a strong judicial policy that encourages class settlements especially in complex class
actions. *See In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 317 (3d Cir.
1998); *see also In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d
768, 785 (3d. Cir. 1995) ("the law favors settlement, particularly in class actions and other
complex cases where substantial judicial resources can be conserved by avoiding formal
litigation"); *In re Sch. Asbestos Litig.*, 921 F.2d 1330, 1333 (3d Cir. 1986) (noting Third
Circuit's policy of "encouraging settlement of complex litigation that otherwise could linger for
years"); *In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 299 (3d Cir. 2005) ("all Federal Circuits
recognize the utility of … 'settlement classes' as a means to facilitate the settlement of complex
nationwide class actions"). Accordingly, in making its assessment pursuant to Rule 23(e), the
Court's intrusion upon what is otherwise a private consensual agreement negotiated between the
parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the
agreement is not the product of fraud or overreaching by, or collusion between, the negotiating

parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned. Fed.R.Civ.P. 23(e); *In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 534 (3d Cir. 2004).

At the preliminary approval stage, the Court need only determine whether the proposed settlement appears on its face to be fair and falls within the range of possible judicial approval. *See id.* In considering whether to grant preliminary approval of a class action settlement, courts make a preliminary evaluation of the fairness of the settlement prior to issuing notice to the class and prior to holding a final approval hearing. If the proposed settlement falls within the range of what could be found "fair, adequate and reasonable," preliminary approval is appropriate, notice may be given to the proposed class and a hearing for final approval can be scheduled. *See Smith v. Prof'l Billing & Mgt. Serv., Inc.*, 2007 WL 4191749, at *1 (D.N.J. Nov. 21, 2007); *Jones v. Commerce Bancorp*, 2007 WL 2085357, at *2 (D.N.J. July 16, 2007).

At this point, the Court need not answer the ultimate question: whether the Settlement is fair, adequate and reasonable. When the Court makes that ultimate determination at a later point, the Court will be asked to review the following factors: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the amount offered in settlement; the extent of discovery completed; the stage of the proceedings; the experience and views of counsel; and the reaction of Class Members to the proposed settlement.  *See Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).

In light of this public policy in favor of settlements generally, and because this Settlement meets the Rule 23 requirements, the Settlement should be preliminarily approved, the Settlement Class certified, and the parties' selection of the Claims Administrator and the notice program approved.

**B.**   **Class Certification Should Be Granted For Settlement Purposes Under Rule 23**

Unlike many cases where preliminary approval is sought, here this Court has previously certified the Class in a contested motion.  Thus, this Court has already made a determination that this action was appropriate for certification under Rule 23, even when the matters of proof were fully contested.  Plaintiffs submit that the record developed since the Court's ruling makes this case an even stronger one for class certification for the purposes of settlement.

Class certification under Rule 23 has two primary components.  First, the party seeking class certification must establish the four requirements of Rule 23(a):  "(1) numerosity ('a class [so large] that joinder of all members is impracticable'); (2) commonality ('questions of law or fact common to the class'); (3) typicality (named parties' claims or defenses 'are typical . . . of the class'); and (4) adequate representation (representatives 'will fairly and adequately protect the interests of the class')."  *Warfarin Sodium*, 391 F.3d at 527; *see also Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613 (1997).  Second, the Court must find that the class fits within one of the three categories of class actions set forth in Rule 23(b).  *Cmty. Bank*, 418 F.3d at 302.  In the present case, Plaintiffs seek certification under Rule 23(b)(3), "the customary vehicle for damage actions."  *Id.*  Rule 23(b)(3) requires that common questions "predominate over any questions affecting only individual members" and that class resolution be "superior to other available methods for the fair and efficient adjudication of the controversy."  *Amchem*, 521 U.S. at 592-93.

In making this analysis, the district court may take the proposed settlement into consideration.  *Prudential*, 148 F.3d 283, 308 (3d Cir. 1998); *Cmty. Bank*, 418 F.3d at 300.  In this respect, as noted above, there is one material difference between the certification of litigation classes and settlement classes:

- 10 -

> Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested, for the proposal is that there be no trial.

*Amchem*, 521 U.S. at 620; *Cmty. Bank*, 418 F.3d at 309.  "The difference is key."  *Warfarin Sodium*, 391 F.3d at 529.  For example, the Third Circuit has explained that:

> In certification of litigation classes for claims arising under the laws of the fifty states, [the Third Circuit has] noted that the district court must determine whether variations in state laws present the types of insuperable obstacles which render class action litigation unmanageable … However, when dealing with variations in state laws, the same concerns with regards to case manageability that arise with litigation classes are not present with settlement classes, and thus those variations are irrelevant to certification of a settlement class.

*Id.*

As discussed below, the Court correctly found that all the Rule 23 requirements are satisfied here.

### 1.    The Rule 23(a) Factors Are Met

#### a.    Numerosity

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is "impracticable."  *Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.* 149 F.R.D. 65, 73 (D.N.J. 1993), *vacated and remanded*, 171 F.3d 818 (3d Cir. 1999).  For purposes of Rule 23(a)(1), "impracticable" does not meet impossible, only that common sense suggests that it would be difficult or inconvenient to join all class members.  *See In re Prudential Insurance Co. of Am. Sales Pract. Litig.*, 962 F.Supp. 450, 510 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998).  Here, Plaintiffs easily establish the numerosity requirement.  The Class numbers in the tens, if not hundreds, of thousands.  Since 2002, HERC has charged at least 73,403 customers for LDW.  *See Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001) (numerosity requirement satisfied "if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40").  Accordingly, as the Court previously found, the numerosity requirement is satisfied.

### b.    Commonality

"Rule 23(a)(2)'s commonality element requires that the proposed class members share at least one question of fact or law in common with each other."  *Warfarin Sodium*, 391 F.3d at 527-28.  "Because the [commonality] requirement may be satisfied by a single common issue, it is easily met."  *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994).  As the Court previously found, the Settlement Class Members share many common issues of law and fact.  In this case, there are numerous questions of law and fact common to the class, such as:

- Whether HERC's LDW charge constitutes a deceptive act or practice under New Jersey's Consumer Fraud Act, N.J.S.A. §56:8-1 *et seq*.;

- Whether HERC's LDW charge constitutes an "unconscionable commercial practice" under New Jersey's Consumer Fraud Act, N.J.S.A. §56:8-1 *et seq*.;

- Whether HERC breached its contractual duty of good faith and fair dealing under New Jersey law by charging too much for LDW in proportion to the value provided to customers;

- Whether HERC has been unjustly enriched by charging for LDW;

- Whether HERC's LDW charge was procedurally and substantively unconscionable under the New Jersey UCC, N.J.S.A. §12A:2A-108;

Each of these questions can be straightforwardly resolved for the entire Class, because, as is discussed below, New Jersey law governs the resolution of this case for all class members.

### c.    Typicality

Rule 23(a)(3) requires that the claims or defenses of the representative parties are typical of the claims or defenses of the class and seeks to ensure that the the interests of the named plaintiffs align with those of the class.  *Baby Neal*, 43 F.3d at 57.  In considering typicality under Rule 23(a)(3), the Court must determine whether "the named plaintiffs' individual circumstances are markedly different or ... the legal theory upon which the claims are based differs from that

upon which the claims of other class members will perforce be based." *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 184 (3d Cir. 2001). Typicality does not require that all class members share identical claims. *Id.* So long as "the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is usually established regardless of factual differences." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183-84 (3d Cir. 2001); *Barnes v. Am. Tobacco, Inc.*, 161 F.3d 127, 141 (3d Cir. 1998).

As the Third Circuit explained in *Warfarin Sodium*:

> [T]he claims of the representative plaintiffs arise from the same alleged wrongful conduct on the part of [the defendant], specifically the alleged misrepresentation and deception regarding the equivalence of generic warfarin sodium and Coumadin. The claims also arise from the same general legal theories. As the District Court noted, the one obvious difference among the various class members is that some are consumers and some are TPPs. However, the named class representatives include members from each group. Accordingly, the District Court did not abuse its discretion in finding that Rule 23's typicality requirement was satisfied.

391 F.3d at 532.

The same is true here. Plaintiffs rented equipment from HERC, executed the same form rental agreement, and were assessed the LDW charge. Plaintiffs therefore have the same interests of other members of the Class in challenging the legality of HERC's common course of conduct in assessing these charges. Thus, this Court's earlier finding of typicality should not be disturbed.

### d.    Adequacy

Rule 23(a)(4) requires that class representatives "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). The adequacy requirement is met if plaintiffs: (1) the named plaintiffs' interests are sufficiently aligned with the interests of the putative class member and (2) are represented by competent counsel. *GM Trucks*, 55 F.3d at 800.

As for the first component, the court must determine whether "the representatives' interests conflict with those of the class." *Johnston*, 265 F.3d at 185. There is no conflict

between the proposed class representatives and the Class.  They seek a remedy for the monetary harm they have suffered due to being assessed allegedly unfair and deceptive charges by HERC. (*See e.g.* Complaint, ¶ 70).  Absent class members have the identical interest, and would receive the same remedy if this suit is prosecuted to a successful conclusion.  Accordingly, the first part of the adequacy requirement is satisfied.

As far as the adequacy of counsel is concerned, there is no doubt that the plaintiffs and the Class are represented by counsel who are well qualified and capable of prosecuting this action.  The Class is represented by Carella, Byrne, Cecchi Olstein, Brody & Agnello, P.C., Complex Litigation Group, LLC, and Seeger Weiss, law firms with national reputations in the class action field.  Simply put, Carella Byrne has been in leadership positions in many of the most significant class actions filed and resolved in this District.  Similarly, Complex Litigation Group and Seeger Weiss have extensive nationwide experience handling class actions and other complex litigation, and claims of the type asserted in this action specifically.  Accordingly, and for the reasons stated in Plaintiffs Motion for Class Certification and as this Court has previously determined in its appointment of these firms as Co-Lead Counsel (DE 110),  Class counsel is qualified to represent the Class.

As a result, both prongs of the adequacy inquiry are satisfied.

2.    **The Rule 23(b)(3) Factors Are Met**

a.    **Predominance**

This action also satisfies the requirement of Rule 23(b)(3) that common questions of fact and law predominate over individualized ones.  As the Supreme Court explained in *Amchem*, "predominance is a test readily met in certain cases alleging consumer fraud … ."  591 U.S. at 625.  "This is even more true in a settlement-only class action, where the court certifying the class need not examine issues of manageability."  *Cmty. Bank*, 418 F.2d at 306.  The Third

Circuit just recently reaffirmed the principles that inform the predominance analysis when considering certification of a settlement class:

> From our case law, we can distill at least three guideposts that direct the predominance inquiry: first, that commonality is informed by the defendant's conduct as to all class members and any resulting injuries common to all class members; second, that variations in state law do not necessarily defeat predominance; and third, that concerns regarding variations in state law largely dissipate when a court is considering the certification of a settlement class.

*Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 297 (3d Cir. 2011). Because Plaintiffs seek certification of a settlement-only class, the existence of any individual inquiry does not preclude class action treatment where all class members face the necessity of proving the same fraudulent scheme. *Cmty. Bank*, 418 F.2d. at 307; *see also Prudential*, 148 F.3d at 315 ("presence of individual questions as to the reliance of each [plaintiff] does not mean that the common questions of law and fact do not predominate"). Thus, the court's earlier predominance finding is even more compelling in the settlement context.

### b.    Superiority

Rule 23(b)(3) also requires a finding that "a class action [be] superior to other available methods for the fair and efficient adjudication of the controversy."  The following factors are relevant to the superiority inquiry:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the likely difficulties in managing a class action.

*Id.*; *Danvers Motor Co. v. Ford Motor Co.*, 543 F.3d 141, 149 (3d Cir. 2008).

Applying these factors in *Warfarin Sodium*, the Third Circuit held that the superiority requirement was satisfied in light of the "potentially large number of class members …."  391 F.3d at 534.  Individual consumer class members had little interest in "individually controlling

- 15 -

the prosecution or defense of separate actions," because each consumer had a very small claim in relation to the cost of prosecuting a lawsuit. *Id.* Thus, from the consumers' standpoint, a class action facilitated spreading of the litigation costs among the numerous injured parties and encouraged the private enforcement of the statutes. *Id.* The relatively small number of individual lawsuits pending against the defendant indicated that there was a lack of interest in individual prosecution of claims. *Id.* Finally, the court cited the district court's finding that "it was desirable to concentrate litigation in Delaware, where [the defendant] had its principal place of business and where several initial class action lawsuits had been filed." *Id.* In *Prudential*, the Third Circuit cited the same factors, as well as the avoidance of "a potentially great strain on judicial resources." 148 F.3d at 316.

The reasoning of these cases is directly applicable here, where the Class numbers in the hundreds of thousands and absent class treatment these Settlement Class Members would never have their day in court because individual suits would be cost-prohibitive given the relatively small amounts at stake. As the Supreme Court explained in *Amchem*:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

591 U.S. at 617. Even if this were not the case, thousands upon thousands of individual trials would impose a massive burden on the Court's resources. By contrast, this Settlement makes manageability concerns irrelevant because "the proposal is that there be no trial." *Amchem*, 521 U.S. at 620. Finally, it is desirable to concentrate this litigation in New Jersey, where Defendant maintains its principal place of business, and where the choice of law provision in the form rental contract mandates application of New Jersey law.

- 16 -

In short, this case meets all the requirements for the certification of a settlement class under Rule 23(a) and (b)(3).

## C.   The Proposed Settlement Is Fair, Reasonable and Adequate, Meriting Preliminary Court Approval Under the *Girsh* Factors

Rule 23(e) requires a determination by the district court that the proposed settlement is "fair, reasonable and adequate." *GM Trucks*, 55 F.3d at 785. The Third Circuit has adopted a nine-factor test to determine whether a settlement is "fair, reasonable, and adequate." The elements of this test – known as the "*Girsh* factors" – are:

> (1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation.

*GM Trucks*, 55 F.3d at 785 (citing *Girsh*, 521 at 157). The Settlement meets each of these factors, and thus, should be preliminarily approved.

### 1.   Complexity, Expense, and Likely Duration of the Litigation

The first *Girsh* factor "captures the probable costs, in both time and money, of continued litigation." *In re Cendant Corp. Litig.*, 264 F.3d 201, 233 (3d Cir. 2001). "By measuring the costs of continuing on the adversarial path, a court can gauge the benefit of settling the claim amicably." *GM Trucks*, 55 F.3d at 812. This factor undoubtedly weighs in favor of settlement.

In *Warfarin Sodium*, the parties had already litigated the case for three years. 391 F.3d at 537. Nevertheless, the court concluded that the first *Girsh* factor was satisfied:

> We agree with the District Court's conclusion that this factor favors settlement because continuing litigation through trial would have required additional discovery, extensive pretrial motions addressing complex factual and legal questions, and ultimately a complicated, lengthy trial. Moreover, it was inevitable that post-trial motions and appeals would not only further prolong the litigation but also reduce the value of any recovery to the class. In a class action of this

- 17 -

> magnitude, which seeks to provide recovery for Coumadin consumers and TPPs
> nationwide, the time and expense leading up to trial would have been significant.

*Id.* at 536.  In this litigation, the path from this stage of the litigation to a final judgment is likely

to be equally long.  This case has been pending for approximately six years and would likely

continue for additional years through trial and appeals.  The cost would be enormous and the

issues complex. Thus, this factor is satisfied.

### 2.        The Reaction of the Class to the Settlement

The second *Girsh* factor "attempts to gauge whether members of the class support the

settlement."  *Prudential,* 148 F.3d at 318.  Of course, at this stage, the Court cannot measure the

number of objectors since notice of the Settlement has not yet been issued.  However, Plaintiffs

are confident that Class Members will overwhelmingly support the Settlement.  Indeed, notice of

Class Certification that was previously distributed to the Class was met by only 647 opt-outs out

of the approximately 727,000 class members who received notice (less than 0.1%).

### 3.        The Stage of Proceedings and the Amount of Discovery Completed

The third *Girsh* factor "captures the degree of case development that class counsel [had]

accomplished prior to settlement. Through this lens, courts can determine whether counsel had

an adequate appreciation of the merits of the case before negotiating." *Cendant*, 264 F.3d at 235;

*GM Trucks*, 55 F.3d at 813.  This inquiry has two aspects: factual and legal.  The discovery

considered by the Court also includes "informal" discovery received from the defendant, third-

parties and experts.  *See, e.g., GM Trucks*, 55 F.3d at 813 (expert testimony and other evidence

from parallel state court proceedings); *Prudential*, 148 F.3d at 319 (witness interviews);

*Cendant*, 264 F.3d at 235 (public filings); *Warfarin Sodium*, 391 F.3d at 537 (consultation with

experts).

This case been extensively litigated through certification and multiple summary judgment motions. The parties were diligently preparing for trial and for possible appeals. Numerous depositions of fact witnesses and experts have been conducted. Thousands of documents have been produced and reviewed in preparation for trial.  Accordingly, this case is mature and prime for settlement.  Moreover, Class Counsel have extensive experience in litigating cases of this type, so they are also aware of the legal merits and pitfalls in litigating cases of this type.  Class Counsel is absolutely confident that they have a thorough appreciation of the facts – good and bad – which bear upon the merits of the claims and the proposed Settlement in this litigation.

### 4. <u>Risks of Establishing Liability</u>

"By evaluating the risks of establishing liability, the district court can examine what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them." *GM Trucks*, 55 F.3d at 319.  While Plaintiffs are confident in the merits of their case, they also recognize the uncertainties of litigation.  "[W]hen parties negotiate a settlement they have far greater control of their destiny than when a matter is submitted to a jury. Moreover, the time and expense that precedes the taking of such a risk can be staggering. This is especially true in complex commercial litigation." *Weiss v. Mercedes-Benz of North America,* 899 F. Supp. 1297, 1300-01 (D.N.J. 1995). "No matter how confident one may be of the outcome of litigation, such confidence is often misplaced." *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971).[3]  The risks of litigation here include the risk of losing at trial or reversals on appeal.  The

---

[3]     Other decisions that demonstrate the enormous risks of litigation include:  *Bentley v. Legent Corp.*, 849 F. Supp. 429 (E.D. Va. 1994), *aff'd without op. sub nom. Herman v. Legent Corp.*, 50 F.3d 6 (4th Cir. 1995); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (en banc) (after jury verdict in favor of plaintiffs and the Class, reversing the district court's denial of judgment n.o.v. for defendants and remanding with instruction to dismiss the complaint); *Levinson v. Prentice-Hall, Inc.,* 868 F.2d 558, 564-65 (3d Cir. 1989) (jury award of $2.3 million

Settlement provides substantial monetary and injunctive benefits without the inherent risk of establishing liability at trial. Thus, these inherently unpredictable risks in establishing liability weigh in favor of settlement.

### 5. Risks of Establishing Damages

"Like the fourth factor, this inquiry attempts to measure the expected value of litigating the action rather than settling it at the current time." *Cendant*, 264 F.3d at 238. The court looks at the potential damage award if the case were taken to trial against the benefits of immediate settlement. *Prudential*, 148 F.3d at 319. In *Warfarin Sodium*, the trial court found that the risk of establishing damages strongly favored settlement, observing that "[d]amages would likely be established at trial through a 'battle of experts,' with each side presenting its figures to the jury and with no guarantee whom the jury would believe." *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 256 (D. Del. 2002), *aff'd* 391 F.3d 516, 537 (3d Cir. 2004). Similarly, in *Cendant*, the Third Circuit reasoned that there was no compelling reason to think that "a jury confronted with competing expert opinions" would accept the plaintiff's damages theory rather than that of the defendant, and thus the risk in establishing damages weighed in favor of approval of the settlement. 264 F.3d at 239. The same is true here. Class Members could have difficulty at trial establishing that they were damaged and to what extent they were damaged, particularly in light of the pending motion to strike Plaintiffs' expert, and the anticipated testimony of both Plaintiffs' and Defendant's experts, each of which would present starkly contrasting damage testimony. Thus, this factor weights in favor of preliminary approval.

---

in punitive damages overturned).

### 6.   Risks of Maintaining Class Action Status Through Trial

Although Plaintiffs believe that the Court has correctly granted class certification and similarly, there is no guarantee that Plaintiffs would have been successful in fighting off another decertification motion (or appeal).

If a class were to be decertified here, it would leave few, if any, class members with both the resources and financial incentive to pursue claims in their own behalf, with the practical result of no recovery by anyone.  *See Carnegie v. Household International, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("The *realistic* alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.") (emphasis in original).  The proposed Settlement provides a remedy now to all class members, rather than risking an uncertain result after years of further litigation.  Indeed, HERC's Motion to Decertify the Class had been denied only pending mediation; HERC would otherwise have the right to reinstate its Motion for Decertify the Class if the Settlement is not approved.  As the Third Circuit explained in *Warfarin Sodium*:

> A district court retains the authority to decertify or modify a class at any time during the litigation if it proves to be unmanageable.  Although Appellants' concerns about the manageability of a multistate class of consumers and TPPs, as we discussed above, did not pose a problem for the certification of a settlement class, there is a significant risk that such a class would create intractable management problems if it were to become a litigation class, and therefore be decertified.  We agree with the District Court that the significant risk that the class would be decertified if litigation proceeded weighs in favor of settlement.

391 F.3d at 537.  Thus, this factor weighs in favor of preliminary approval.

### 7.   Ability to Withstand Greater Judgment

The seventh *Girsh* factor considers "whether the defendants could withstand a judgment for an amount significantly greater than the [s]ettlement." *Cendant*, 264 F.3d at 240.  It is likely that HERC could withstand a judgment greater than it is paying as a settlement here.  However,

that does not, by itself, militate against approval.  In *Warfarin Sodium*, for example, the court stated that:

> Although the plaintiffs do not dispute that DuPont's total resources far exceed the settlement amount, the fact that DuPont could afford to pay more does not mean that it is obligated to pay any more than what the consumer and TPP class members are entitled to under the theories of liability that existed at the time the settlement was reached.  Here, the District Court concluded that DuPont's ability to pay a higher amount was irrelevant to determining the fairness of the settlement.  We see no error here.

391 F.3d at 538; *see also GM Trucks*, 55 F.3d at 818 ("no error" in the district court's decision not to "attribute any significance" to defendant's ability to withstand a greater judgment).

Further, the likelihood that a greater result could be achieved at trial is uncertain, at best. Here, Settlement Class Members can receive a substantial part of the costs incurred for their entire LDW payments during the class period.  In addition to the award to Class members, the Settlement also provides for significant injunctive relief.  Thus, this factor weighs in favor of preliminary approval.

### 8. The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and All the Attendant Risks of Litigation

The last two *Girsh* factors are usually considered together.  They ask "whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial."  *Prudential*, 148 F.3d at 322; *see also Warfarin Sodium*, 391 F.3d at 538 (court should consider "whether the settlement represents a good value for a weak case or a poor value for a strong case").  As Judge Becker explained in *GM Trucks*, "[t]he evaluating court must ... guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution."  55 F.3d at 806.

At the preliminary approval stage, the Court need only find that the proposed settlement is "in the range of fair and reasonable." *See, e.g., Spark v. MBNA Corp.*, 48 Fed. Appx. 385, 387-88 (3d Cir. 2002); *see also Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee,* 616 F.2d 305, 314 (7th Cir. 1980) ("within the range of possible approval"); *Desantis v. Snap-On Tools Co., LLC*, 2006 WL 3068584, at *6 (D.N.J. Oct. 27, 2006) ("within the range of reasonableness"); *Simon v. KPMG LLP*, 2006 WL 1541048, at *8 (D.N.J. June 2, 2006) (same).

In making its Rule 23(e) determination, the Court should apply "an initial presumption of fairness when … (1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class object[s]." *Warfarin Sodium*, 391 F.3d at 595; *Cendant*, 264 F.3d at 232 n.18. Here, the parties engaged in arms-length negotiations through a well-respected and experienced mediator, the Honorable William Wertheimer. Additionally, Plaintiffs and Defendant were properly equipped to understand the strengths and weaknesses of their cases given the discovery and investigation they had performed over many years. Thus, this factor weighs heavily in favor of preliminary approval.

Accordingly, all the *Girsh* factors are satisfied and the Settlement should be preliminarily approved.

**D.      The Proposed Notice Program Satisfies Rule 23 and Due Process and Should Be Approved**

      **1.      The Proposed Notice Program is Adequate**

As the Supreme Court explained in *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950):

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections . . . The notice must be of

- 23 -

such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance.

*Id.* at 314.   The notice provisions in the Settlement Agreement ("Notice Program") in this case, described below, meet this standard.

Under Rule 23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."   What constitutes reasonable effort as well as what constitutes the best notice practicable under the circumstances depends upon the individual facts in the case.   *See In re Prudential Insurance Co. of America Sales Practices Litig.*, 177 F.R.D. 216, 232 (D.N.J. 1997) (quoting *Carlough v. Amchem Products*, 158 F.R.D. 314, 325 (E.D. Pa. 1993) ("In all cases the Court should strike an appropriate balance between protecting class members and making Rule 23 workable").   Individual notice is required for all class members who can be identified with reasonable effort.   *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974).

Defendant has the names and address of the Class Members, and mailings will be made directly to them. Indeed, initial direct notice to each Class Member of Class Certification was made in the same manner, was imminently successful and further ensures an accurate and up-to-date mailing list.  In addition, the parties will establish a dedicated website to provide further information about the Settlement. Thus, this campaign is the best practicable notice under the circumstances.

### 2.      The Form and Content of the Class Notice is Adequate

The form of the class notice is governed by Rule 23(c)(2), which provides that "[t]he notice must clearly and concisely state in plain, easily understood language:

(i)      the nature of the action;

(ii)     the definition of the class certified;

(iii)    the class claims, issues, or defenses;

(iv)    that a class member may enter an appearance through an attorney if the member so desires;

(v)     that the court will exclude from the class any member who requests exclusion;

(vi)    the time and manner for requesting exclusion; and

(vii)   the binding effect of a class judgment on members under Rule 23(c)(3).

Fed.R.Civ.P. 23(c)(2)(B).  The proposed direct Notice, attached as Exhibit C to the Settlement, meets all of these requirements.

> **3.      The Proposed Claim Form is Adequate**

The proposed Election of Benefits Form (attached as Exhibit A to the Settlement) will be mailed to the Class Members with the Notice and will be made available on-line.  After filling out the Election of Benefits Form, Class Members will mail the Form to the Settlement Administrator.  The Election of Benefits Form clearly informs the Settlement Class Members of the process they must follow.  *Bernhard v. T.D. Bank, N.A.,* 2009 WL 3233541, at *5 (D.N.J. Oct. 5, 2009).  The parties believe that the Election of Benefits Form is adequate and that because the vast majority of the Settlement Class Members are businesses, they will have easy access to the required information, which will increase participation.

**CONCLUSION**

For the foregoing reasons, Class Counsel respectfully request that the Court grant the relief requested herein.  A proposed Order is attached as Exhibit D to the Settlement.

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO
Attorneys for Plaintiff and Class Counsel


By:    /s/ James E. Cecchi
         JAMES E. CECCHI

Dated:  March 6, 2013


Paul M. Weiss
Richard J. Burke
COMPLEX LITIGATION GROUP LLC
513 Central Avenue, Suite 300
Highland Park, Illinois 60035
(847)433-4500

Jonathan Shub
Scott Alan George
SEEGER WEISS
550 Broad Street
Newark, New Jersey 07102
(973) 639-9100


*Counsel for Plaintiffs and Class Counsel*