NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
MIGUEL V. PRO and DAVIS :
LANDSCAPE, LTD., a Pennsylvania :
Corporation, individually :
and on behalf of others similarly situated :
: **Hon. Dennis M. Cavanaugh**
Plaintiffs, :
: **OPINION**
v. :
: Civil Action No. 06-3830 (DMC)
HERTZ EQUIPMENT RENTAL :
CORPORATION :
:
Defendant. :
_____ :

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon Application for Final Approval of the Class Action Settlement (App. for Final Approval, June 11, 2012, ECF No. 242), in accordance with the parties' Settlement Agreement dated March 6, 2013 and motion by Miguel V. Pro and Davis Landscape, Ltd. on behalf of themselves and all other members of the Settlement Class (collectively "Plaintiffs") for approval of the agreed upon attorneys' fees to be paid by Hertz Equipment Rental Corporation ("HERC" or "Defendant") with the final settlement of the instant litigation. (Pls.' Mot. for Attny's Fees, May 7, 2013, ECF No. 239). For the reasons stated below, Plaintiffs' Application for Final Approval of the Settlement Agreement is **granted** and Plaintiffs' Motion for Approval of Attorneys' Fees is **granted**. Plaintiffs are hereby awarded the agreed upon $11.5 million which includes the $1.3 million in hard costs.[1]

---

[1] Hard costs refer to the expenses spent by Class Counsel in litigating the case.

I.   **BACKGROUND**[2]

On August 15, 2006, Plaintiffs initiated this action against HERC, alleging that HERC's Loss and Damage Waiver ("LDW") was unconscionable in that it provided illusory coverage for a premium price. Plaintiffs also alleged that the Environmental Recovery Fee ("ERF") HERC charged did not reflect any actual additional fees or expenses related to protection of the environment. On December 11, 2008, the Court appointed Carella Byrne, Complex Litigation Group LLC and Seeger Weiss LLP as co-lead counsel ("Class Counsel"). HERC and the Class Representatives reached a settlement (the "Settlement"). The parties submitted a Settlement Agreement dated March 6, 2013 ("the Settlement Agreement"). The Court granted preliminary approval of the Settlement on March 18, 2013 (the "Preliminary Approval Order") and directed the parties to provide notice to the Class of the proposed settlement and the Final Approval hearing date via mail, electronic mail, and the Internet. Notice was so provided. No objections were made by members of the Class.

The terms of the Settlement Agreement provide for both retroactive and prospective benefits to members of the class, i.e. customers who rented equipment from HERC and paid an applicable fee ("Class Members") during the applicable Class Period. Included among those retroactive benefits is the Class Member's option to elect for reimbursement of damages paid out-of-pocket for rented equipment ("Category 1 claimant") or to obtain compensation for LDW paid ("Category 2 claimant"). Class Members may choose to receive settlement benefits under either Category 1 or Category 2. Furthermore, HERC has agreed to change its future business practices with regard to the way that it describes and discloses its LDW program and ERF fee to its customers. (See Settlement Agreement, Exh. E). These changes include a plain statement of

---

[2] The facts contained herein are taken from the parties' respective moving papers.

2

the deductible amount on the first page of its disclosure documents.

Category 1 claimants are defined pursuant to the Settlement as those HERC customers who purchased LDW, experienced either partial or complete damage to the equipment, and paid HERC for such damages up to the total amount of the applicable LDW deductible for each occurrence during the Class Period. HERC has agreed to pay up to $3 million to provide for Category 1 claims. Category 1 claimants that qualify will receive 75% of the amount of the total deductible paid by the claimant during the Class Period, subject to possible *pro rata* reduction if the total amount of eligible claims exceeds $3 million.

Conversely, Category 2 claimants are those HERC customers who do not submit a Category 1 claim. Category 2 claimants, often one-time or sporadic customers, may elect under the terms of the Settlement Agreement to receive discounts on up to four (4) future rentals totaling 50% of all LDW paid during the period or a cash payment equal to 15% of the total LDW paid during the Class Period. The benefits allotted from Category 2 claimants are not taken from a limited fund and are not subject to any possible *pro rata* reduction.

The parties now move for final approval of the Settlement Agreement and for approval of agreed upon attorneys' fees. Pursuant to the Settlement, HERC agreed to pay the negotiated attorneys' fees to Class Counsel. This agreed upon fee amounted to $11.5 million, which includes the $1.3 million in hard costs incurred by Class Counsel since it began litigating the case in 2006. The fee was negotiated after the substantive terms of the Settlement Agreement were made, under the supervision of an arms-length mediator, the Honorable William L'E. Wertheimer, a retired New Jersey Superior Court Judge. The Settlement Agreement provides customers who are members of the class with the option of either obtaining a cash refund of a portion of the premiums they paid HERC or credits on future rentals of HERC equipment. The

economic relief made available to the Class is valued at approximately $65 million. HERC does not oppose Plaintiffs request for an award of fees and reimbursement of costs and expenses of $11.5 million. The matter is now before the Court.

## II. STANDARD OF REVIEW

### A. Settlement Agreement Approval

Federal Rule of Civil Procedure 23(e), provides that "[a] class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such a manner as the court directs." FED. R. CIV. P. 23(e). In determining whether to approve a class action settlement pursuant to Rule 23(e), "the district court acts as a fiduciary who must serve as a guardian of the rights of absent class members." In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 785 (3d Cir.1995) (quoting Grunin v. Int'l House of Pancakes, 513 F.2d 114, 123 (8th Cir. 1975), cert. denied, 423 U.S. 864 (1975)).

Before giving final approval to a proposed class action settlement, the Court must determine that the settlement is "fair, adequate, and reasonable." Girsh v. Jepson, 521 F.2d 153, 157 (3d Cir. 1975). In Girsh v. Jepson, the Third Circuit identified nine factors, known as the "Girsh factors," that a district court should consider when making this determination: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the

attendant risks of litigation. 521 F.2d 153, 157 (3d Cir. 1975). "These factors are a guide and the absence of one or more does not automatically render the settlement unfair." In re American Family Enterprises, 256 B.R. 377, 418 (D.N.J. 2000) (internal citations omitted). Rather, the court must look at all the circumstances of the case and determine whether the settlement is within the range of reasonableness under Girsh. See In re Orthopedic Bone Screw Prods. Liab. Litig., 176 F.R.D. 158, 184 (E.D. Pa.1997); In re AT&T Corp. Sec. Litig., 455 F.3d 160 (3d Cir. 2006).

### B. Attorneys' Fees

Pursuant to 29 U.S.C. § 216 the Court is authorized to award "reasonable attorney[s'] fees to be paid by the defendant and costs of the action." 29 U.S.C. § 216. As recognized by the Supreme Court, "the district court has discretion in determining the amount of a fee award. This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). The Third Circuit has identified several factors that a district court should consider when evaluating a motion for an award of attorneys' fees. Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 (3d Cir. 2000). These factors include: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiff's counsel; and (7) the awards in similar cases. In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 301 (3d Cir. 2005) (citing Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 n.1 (3d Cir. 2000)). The Court may not *sua sponte* reduce a request for attorneys' fees. Bell v. United Princeton

Properties Inc., 884 F.2d 713, 719 (3d Cir. 1989). Only if the defendants challenge the hours or "if the hours expended are within the judge's personal knowledge" is a reduction proper. Cerva v. E.B.R. Enterprises, Inc., 740 F.Supp. 1099, 1103 (E.D. Pa. 1990).

### III. DISCUSSION

#### A. The Settlement Agreement

This Court finds that the Settlement Agreement satisfies Rule 23(e) because the relief it provides the Class is "fair, adequate, and reasonable" pursuant to the Third Circuit's nine-factor Girsh test. Notably, none of the members of the Class, numbering in the hundreds of thousands, have objected to the terms of the Settlement.

##### 1. Complexity and Likely Duration of Litigation

The first factor set forth in Girsh focuses assessment of the "probable costs, in both time and money, of continued litigation." In re Cendant Corp. Litig., 264 F.3d 201, 234 (3d Cir. 2001) (citing In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig., 55 F.3d 768, 812 (3d Cir.1995)). The significant delay in recovery that may result if this case proceeds to trial lends in favor of approval of the settlement. See, e.g., In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 536 (3d Cir. 2004); Weiss v. Mercedes Benz of N. Am., Inc., 899 F. Supp. 1297, 1301 (D.N.J. 1995). This matter has been pending for approximately six years and, if trial and appeals occur, would likely continue for years further. Therefore, this factor favors settlement approval.

##### 2. Reaction of the Class to Settlement

The second Girsh factor "attempts to gauge whether members of the class support the settlement." In re Prudential Ins. Co. of America Sales Practice Litig., 148 F.3d 283, 318 (3d Cir. 1998). The Court notes that this second factor is especially critical to its fairness analysis, as

the reaction of the class "is perhaps the most significant factor to be weighed in considering [the settlement's] adequacy." Sala v. National R.R. Passenger Corp., 721 F. Supp. 80, 83 (E.D. Pa. 1989). Pursuant to this Court's Preliminary Approval Order, any objections from the Settlement Class were required to be received by the Court twenty-one (21) days before the June 18, 2013 Final Approval Hearing. (Preliminary Approval Order, Mar. 18, 2013, ECF No. 238). As noted above, not a single Class Member has objected to the Settlement. Therefore, this factor overwhelmingly weighs in favor of approval.

### 3. Stage of the Proceedings and Amount of Discovery Completed

The third Girsh factor "captures the degree of case development that class counsel [has] accomplished prior to settlement." In re Cendant Corp. Litig., 264 F.3d 201, 233 (3d Cir. 2001). In short, under this factor the Court considers whether the amount of discovery completed in the case has permitted "counsel [to have] an adequate appreciation of the merits of the case before negotiating." In re Schering Plough/Merck Merger Litig., No. 09-1099, 2010 WL 1257722, at *30 (D.N.J. Jan. 20, 2012). This matter has been extensively litigated through certification and multiple summary judgment motions, and numerous depositions of witnesses and experts have been conducted. Counsel was well-versed in the merits and complexities of this matter before beginning negotiations. Therefore, this factor also weighs in favor of approval of the Settlement Agreement.

### 4. Risks of Establishing Liability

The fourth factor set forth by Girsh involves the risk of establishing liability. A trial on the merits always entails considerable risk. Weiss v. Mercedes-Benz of N. Am., Inc., 899 F. Supp. 1297, 1301 (D.N.J. 1995). The inquiry requires a balancing of the likelihood of success if "the case were taken to trial against the benefits of immediate settlement." In re Safety

Components Int'l, 166 F. Supp. 2d 72, 89 (D.N.J. 2001) (quoting In re Prudential Ins. Co. of Am. Sales Practices Litig., 148 F.3d 283, 319 (3d Cir.1998)). The risks of litigation in this matter include the risk of losing at trial or reversal on appeal. The Settlement Agreement provides substantial monetary and injunctive benefits without the inherent risk of being unable to establish liability during litigation. Accordingly, this factor also weighs in favor of approval.

### 5. Risks of Establishing Damages

Like the preceding factor, "this inquiry attempts to measure the expected value of litigating the action rather than settling it at the current time." In re Cendant Corp. Litig., 264 F.3d 201, 238 (3d Cir. 2001) (quoting In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig., 55 F.3d 768, 816 (3d Cir. 1995)). The Court compares a potential damage award if the case were taken to trial against the benefits of immediate settlement. In re Prudential Ins. Co. of America Sales Practice Litig., 148 F.3d 283, 319 (3d Cir. 1998). The Third Circuit noted in Cendant that no compelling reason existed to think that "a jury confronted with competing expert opinions" would accept the plaintiff's theory of damages over the defendant's, and therefore the risk in establishing damages weighed in favor of approval of the settlement. 264 F.3d at 239. Here, Class Members may have difficulty at trial establishing damages and the extent of those damages, especially in light of the pending motion to strike Plaintiffs' expert and the starkly different trial testimony anticipated by each side's opposing experts. Therefore, this factor also weighs in favor of approval.

### 6. Risk of Maintaining the Class Action through Trial

The Court has granted class certification in this matter. However, even where a class has already been certified, courts routinely approve settlement pursuant to the other Girsh factors in light of the ever-present risk that "intractable management problems" may warrant

8

decertification of the class. In re Safety Components, Inc. Sec. Lititg., 166 F. Supp. 2d 72, 91 (D.N.J. 2001) (internal citations omitted). Here, there is no guarantee that Plaintiffs would survive a subsequent decertification motion. If the Class were to be decertified, it would leave Class Members with few resources or a financial incentive to pursue claims on their own behalf. The proposed Settlement Agreement offers an amenable remedy to all Class Members, while avoiding the risk of an uncertain result following subsequent years of litigation. Thus, this factor supports approval of the Settlement Agreement as well.

### 7. Ability of Defendants to Withstand Greater Judgment

The seventh Girsh factor instructs the Court to consider "whether the defendants could withstand a judgment for an amount significantly greater than the [s]ettlement." In re Cendant Corp. Litig., 264 F.3d 201, 240 (3d Cir. 2001). Although it is recognized that HERC could likely withstand a judgment greater than the settlement proposed here, that, in and of itself, does not require denial of final approval. See, e.g., In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 538 (3d Cir. 2004) (concluding that "[DuPont's ability to pay a higher amount was irrelevant in determining the fairness of the settlement."). Additionally, the likelihood that Plaintiffs would achieve a more substantial amount at trial is uncertain. With approval of the Settlement Agreement, Class Members will receive a substantial part of the costs incurred for their LDW payments made during the Class Period. In addition to a monetary award for Class Members, the Settlement Agreement also offers injunctive relief. Therefore, this factor does not thwart approval of the Settlement.

### 8. Range of Reasonableness of the Settlement Fund in Light of Best Possible Recovery And in Light of Litigation Risks

The final two Girsh factors are typically considered in tandem. The eighth and ninth factors inquire "whether the settlement is reasonable in light of the best possible recovery and the

risks the parties would face if the case went to trial." In re Prudential Ins. Co. of America Sales Practice Litig., 148 F.3d 283, 322 (3d Cir. 1998). Here, the parties engaged in arms-length negotiations overseen by an experienced mediator, the Honorable William L'E. Wertheimer. Further, Plaintiffs and Defendant were properly equipped to understand both the strengths and relative weaknesses of their cases, given the discovery and investigation that has occurred thus far in this extended litigation. This, like the other Girsh factors, weighs in favor of final approval. Based on the foregoing, this Court finds that the Settlement Agreement is fair, adequate, and reasonable. The Settlement Agreement represents a meaningful recovery for the class and the fact that no member has objected to its terms demonstrates the adequacy of the relief provided.

### B. The Fee Agreement

Plaintiffs' Counsel are entitled to the proposed and agreed upon $11.5 million fee, to include the $1.3 million in hard costs, to be paid within ten (10) days of final approval of the Settlement Agreement. HERC has agreed to the proposed fees and, after the Final Approval hearing on June 18, 2013, to the timing of the initial payment. The Court finds the fee is justified under the factors to be considered in determining fee awards.

The Supreme Court has recognized a preference for allowing litigants to resolve fee issues through agreement, stating "[a] request for attorney[s'] fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). In light of this recognized principle, Courts routinely approve agreed-upon attorneys' fees, particularly when the amount is independent and does not impact the benefit obtained for the class. See In re LG/Zenith Rear Projection Television Class Action Litig., Civ. No. 06-5609, 2009 WL 455513, at *8-9 (D.N.J. Feb. 18, 2009) (approving the

10

attorneys' fees requested for class counsel after a finding that the fees were separate from, and thus did not diminish, the class settlement); In re Ins. Brokerage Antitrust Litig., MDL Docket No. 1663, 2007 WL 1652303, at *1, *4 (D.N.J. June 5, 2007), aff'd 579 F.3d 241 (3d Cir. 2009) (same); In re Prudential Ins. Co. of Am. Sales Practice Litig., 106 F. Supp. 2d 721, 732 (D.N.J. 2000) (same).

Here, any award of attorneys' fees and costs is wholly separate and apart from the relief provided for the Settlement Class and that relief will not be reduced by an award of the fees. The proposed amount of attorneys' fees was garnered following the Settlement Agreement. Furthermore, the fee represents a market rate compromise negotiated by sophisticated counsel familiar with complex and class action litigation in the context of mediation. The Court finds that the expenses requested were reasonably necessary to try the complex issues presented in this matter and the hourly rate requested is comparable to the market rate for similar services by attorneys of similar experience in the respective geographic area.

The Court further finds that applicable methods of attorneys' fee calculation support the reasonableness of the requested attorneys' fees. The common benefits doctrine bolsters an award of attorneys' fees where class counsel's efforts in litigating a case results in "a substantial benefit on members of an ascertainable class." See In re Diet Drugs, 582 F.3d 524, 546 (3d Cir. 2009) (internal citations and quotations omitted). Here, the Settlement provides significant pecuniary and non-pecuniary benefits to Class Members.

Plaintiffs also employ the percentage-of-recovery approach to justify the reasonableness of the agreed upon attorneys' fees. (Pls.' Mot. Br. 21). The percentage of recovery method may be utilized "in common fund cases because it allows courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'" In re Rite Aid Corp. Sec.

Litig., 396 F.3d 294, 300 (3d Cir. 2005) (quoting In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions, 148 F.3d 283, 333 (3d Cir. 1998)). The Manual for Complex Litigation also endorses the use of the percentage of recovery method in awarding attorneys' fees in common fund cases. See MANUAL FOR COMPLEX LITIGATION (FOURTH) § 14.21 at 187 (2004) (commenting that "the vast majority of courts of appeals now permit or direct district courts to use the percentage-fee method in common fund cases"). In applying that method here, it is determined that the total amount available to the Category 1 and Category 2 claimants, i.e. those who paid for damage to rented equipment and those that provided compensation for LDW paid respectively, is $66,033,254 exclusive of attorneys' fees. (Pls.' Mot. Br. 23). When the requested amount of attorneys' fees is added to the sum, the value of the Settlement is $77,533,254. (Id.) Therefore, the percentage of requested fees is 14.8%. (Id.) Upon adding a conservative $10 per Class Member for injunctive relief, the percentage is reduced to 13.3%. (Id.) Further, the percentage requested is fair and reasonable under the relevant standards set forth in Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 n.1 (3d Cir. 2000). This matter involved complex legal issues and Class Counsel accepted representation on a fully contingent-fee basis. Courts have recognized that where counsel's compensation is contingent on recovery, a premium above counsel's hourly rate may be appropriate. See Gunter v. Ridgewood Energy Corp., 233 F.3d 190, 199 (3d Cir. 2000) ("[T]he risk counsel takes in prosecuting a client's case should also be considered when assessing a fee award."). This matter has spanned the course of more than six years and has involved significant motions practice. It is clear that class counsel has been extensively involved in each aspect of this case from its inception more than six years ago. The Court is therefore satisfied that the attorneys' fees requested are fair and reasonable.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Application for Final Approval of the Settlement is **granted** and Plaintiffs' Motion for Attorney's Fees is **granted** in the amount of $11.5 million, to include $1.3 million in hard costs, to be paid within ten (10) days of final approval of the Settlement. An appropriate Order accompanies this Opinion.

/s/ Dennis M. Cavanaugh, U.S.D.J.

Date:      June 20, 2013
Original:  Clerk's Office
Cc:        All Counsel of Record